May it please the court, Leon Howard and Ryan Villa on behalf of Plaintiff Clifton White. Before you start, I'm not sure what we're doing here. Let me explain why. Thank you. There's no question that your client served time that he shouldn't have. That's not disputed, is that correct? That's correct, Your Honor. Was that time in part incarceration, in part parole? That's also correct, Your Honor. The state doesn't just automatically say we're going to give you some money? I mean, do you have to sue to get that? In this instance, Your Honor, yes. At the center of this case is four years of liberty that cannot be given back. The state, through a court order, agreed that Mr. White should have been released in September of 2016, but kept it under its control until 2020. It doesn't think that it has a responsibility to provide compensation? There's not some system to do that? Your Honor, that was a surprise to us as well, that we weren't able to resolve this matter pretty early on after the court order was made clear. It's not a problem. The state is just overflowing with money right now. That's not the problem. That's correct. The problem, Your Honor, and it is quite frankly, there's protections that we all know of, like qualified immunity. And this is our second time. You don't have an easy legal case. You've got a very strong equitable case. That could be your correct, Your Honor. And through the course of this case, we are now here on two issues. One pertains to court civic, and that is whether Mr. White's claims were timely, even though he was under the same continuing sentencing restraint. That's on a state law claim. Yes, that's under the state law. And so we're here. We have analogous law in federal court, under federal law. Do we have any state court decisions, whether they apply heck or anything like that? We do not. We don't have a case where the New Mexico Supreme Court has squarely answered this false imprisonment accrual issue. But in those instances, when there is established federal law like the heck doctrine, there's good reason to believe that the New Mexico Supreme Court would adopt that logic, at least in part. Because the wisdom of heck is that we don't want people going out and getting civil orders that they are falsely imprisoned while there is a criminal sentencing order that keeps the person under the restraint of the state. Should we let the state courts decide that issue? Your Honor, the answer is yes, and that issue surfaced while this case was ongoing. And we filed and added Corsivic as a defendant in the third amended complaint. Once we learned that it had a role in the sentence apparatus, access to the case management system and provided information that was manipulated into the sentencing system that kept Mr. White under the wrongful restraint. And so at that point, they were added as a defendant, which was well within the three years since the order releasing Mr. White. Did anyone move to certify the issue to the state Supreme Court? That did not happen at the district court level, Your Honor. And so the primary issue there is the district court became too focused on restraint as being released from a physical building when the law in New Mexico on parole is clear. Somebody serving their sentence on parole is still under the control of the state and therefore in custody. And so there's two ways to think about it. We discussed one heck that we believe the New Mexico Supreme Court would adopt. And the other that points in the same direction is the restatement, which also the New Mexico Supreme Court often relies on. And under the restatement hinges on the terms parole. I'm sorry, custody and restraint. And if you take the next step and look at what the New Mexico courts have said about parole, it certainly says the person still in custody of the state and still under restraint. And therefore, the release from a physical building in 2019 was the wrong date to focus on. It's really when Mr. White was discharged from his sentence in October of 2020 as the date of approval. Do you have any cases in which a court has treated parole the same as imprisonment for purposes of false imprisonment for purposes of that kind of claims? Yes, your honor. There's the New Mexico case Roybal. And there's another case, New Mexico case Robinson, that stand for the proposition that parole is custody. Further, in the federal habeas world, there's a case, Jones v. Cunningham, that also treats parole as in custody. And New Mexico has a unique parole system that I understand is different from other states. And so parole is by every measure an extension of a sentence. The case Roybal I just mentioned goes as far as to say the person is still serving their sentence just outside of the walls. And so turning to the remaining New Mexico Corrections Department defendants, The claim against the remaining New Mexico Correction Department defendants is also straightforward. The people responsible for administering Mr. White's sentence, the record custodian, sentence calculation and parole administration actors that maintained erroneous sentence information, failed to correct known errors and allowed courts and supervision officers to rely on bad information in ways that kept Mr. White under wall. You concede that you have to prove that those correction department people acted with intent or reckless disregard. Is that correct? That is correct. What facts in the complaint can support that? Yeah, there's several facts in the complaint and we've attached a number of exhibits. So first I would start with the entry into the case management system that created a new offense in the case management system that said, Which had no relation to the underlying sentence Mr. White had. Who made that entry? Your Honor, we haven't had the benefit of discovery in this case. You have to allege specific people. We did and we have DOE actors in our complaints and, you know, based on information and belief, the best representation I can make without discovery is defendant Lisa Padilla, who is a records custodian who was in charge, had her hands on the calculations of Mr. White's sentence and access. What shows that she is the one who made the entry that this was a second offense? Your Honor. And I assume that's because habitual offenders don't get the same good time. Is that it? Or what difference did it make? Your Honor, so the difference that it makes, and this is going back to your initial question, why are we here? It's because of qualified immunity and having somebody who's incarcerated without access to the same information as the state and the whole sentencing apparatus to be able to prove who did what to who without the benefit of discovery creates a challenge. And so what we're able to provide in our complaint are good time figuring sheets that have L. Padilla at the bottom of the good time figuring sheets. Are her initials on a document that says second offender? Your Honor, we don't have access to this. You have some documents with her initial on it. That's correct. But not this document. This document is a printout from a computer system, and it could have been a DOE defendant. It could have been most likely defendant, Padilla, because we know she was the case. Let me ask two questions about that. One, what difference does it make if she was the second, if he was the second offender? Does that affect the time you said? There's no such thing as a second offense. Well, then maybe I misunderstood. I thought the error was to put that this was a second offense. Your Honor, the best I can speculate is that Mr. White goes back into the facility on a parole violation. The system is telling this records custodian there's no more jurisdiction over this defendant. And so she made an entry into the system that made it appear as if the state still had jurisdiction over Mr. White. We don't know who that was. But, see, under Iqbal and Cromley, you simply have to have allegations. And I can see your problem with not identifying people, but none of the named defendants are tied to those entries. Not only tied to them, but then you've got to have evidence that it wasn't just a negligent error, an oversight typo, that it was something done intentionally with reckless disregard. And that's what I'm not seeing in your complaint. So, Your Honor, in the third amended complaint, there are direct allegations against Defendant Padilla for preparing the good time figuring sheets. And in the record, there's an expert who talks about the inconsistency and can't even come up to a conclusion or an opinion on the appropriate release date because the good time figuring sheets were so recklessly and negligently prepared. Maybe I'm mistaken. Is this on summary judgment or on dismissal? This is – we're at Rule 12 stage, Your Honor. So what's an expert opinion? How's an expert opinion considered? I don't mean to distract the court with that. All I'm trying to say is the record shows, based on the evidence that we have and are able to provide, that the good time figuring sheets that predict the release date are all over the map. But there are clear records in the offender system that show a release date as early as 2016. There's good time figuring sheets that show a release date as early as 2016. And then, all of a sudden, they're starting to create new good time figuring sheets that miraculously show a new release date. And I want to get to why this is clearly established. This court, even in the first appeal in this case, relied on the obviousness doctrine. And the tense recognizes, and I think Your Honor recognizes in your first question to me, is some constitutional violations are so obvious that a case on all fours is not required. Did you make that argument on appeal, though? I mean, the doctrine is well settled and available to you, but did you make it on appeal? Did you rely on sort of this obviousness argument in support of establishing the law on the second? Your Honor, that is in our briefing, and we don't only have to rely on that. We also rely on clearly established law in this circuit through Pierce and McCarty, which stand for the proposition that you cannot provide false information into legal process that drives a wrongful or unlawful detention. And that is directly analogous to this instance where we have records custodian actors providing false information into a legal process that resulted in a court order that extended Mr. White's jurisdiction. And then the third way this is clearly established is the weight of authorities on unlawful detention and over-detention. And that, in our briefing, we have cases from the Fifth Circuit, Eleventh Circuit, Ninth Circuit, cases like Alcocer's sample, Alexander, Davis, that all stand for the proposition that it is obvious that an inmate cannot be detained past its release date. And so this case is not about just some simple paperwork errors. It's about sentence administration gone badly wrong. And we're up here on the remaining corrections department defendants. The first time we were here on wardens. Now we're here with the people who actually had their hands in the sentence and provided that false information that resulted in an order extending Mr. White's sentence wrongfully. I see my time is up. Thank you.  Good afternoon, Your Honors. Kevin Wynn on behalf of Athlete Corps Civic. Let me ask you. Yes. You're not disputing that he was under a sentence for several years after the sentence expired. He was either on parole or in confinement. You're not disputing that, are you? I'm not disputing it for the purposes of the timeliness argument. There is a question, though, as to whether the discharge order that he obtained based on the stipulation was granted by the court just a few hours after the next day. Did discharge his sentences retroactively or just prospectively from that day? But you're not disputing that there was an error in calculating the sentence. I have no reason to dispute that. And the state has no mechanism to compensate people for that? Whether it was done intentionally, with reckless disregard, negligently, or a computer error or whatever, there's no mechanism to compensate for that? Judge Hartz, I'm not in a position to answer that question because I represent Corps Civic. Perhaps the state may be able to address that better, but I'm not personally aware of any. Okay, you're representing Corps Civic? Yes, sir. Why shouldn't the issue be resolved by the state Supreme Court? You're absolutely right, Judge Hartz. It should be resolved by the New Mexico Supreme Court. But there's no reason to engage in plaintiff's theories and predictions as to whether the New Mexico Supreme Court would change its laws and endorse his theories because, one, his theories are wrong. And, two, the question on appeal, whether his claims are timely filed, can be resolved based on the existing law because the New Mexico Supreme Court has already held that favorable termination is not an element of a malicious abuse of process claim. And plaintiff's entire theory was that HEC should apply because of the favorable termination requirement. He had to obtain a favorable termination of his underlying sentence based on the October 2023 discharge order before he could bring his claims. So that's contrary to the federal law of HEC, is that right? It is, Your Honor. It's completely contrary to it. And plaintiff actually concedes this in the reply brief, stating that favorable termination is not an element of his claim based on the absence of probable cause. If so, this entire appeal has been a waste of the court's time and judicial resources because that position is completely contrary to what he argued in the district court and in his opening brief. He tries to reconcile that contradiction by arguing that HEC is not actually a favorable termination or delayed accrual rule, but rather a rule based on the doctrine of collateral estoppel. He argues that until he obtained that October 2023 stipulated discharge order, he was stopped from collaterally attacking the underlying sentence. But that argument fails because collateral estoppel is completely irrelevant to the accrual of his claims to the statute of limitations issue. Collateral estoppel is issue preclusion, which precludes a party from, excuse me, my mouth is running dry, re-litigating issues that the party had an adequate opportunity to argue in a prior suit actually litigated the issue, and the court reached the final adjudication on the merits that necessarily resolved that issue either explicitly or implicitly. That's completely irrelevant to the issue here as to when his claims accrued and whether they're time barred. Indeed, the doctrine of collateral estoppel and the statute of limitations can act independently of each other as separate bars because issues can be precluded in a timely fault claim and vice versa. Now, when you talked about the New Mexico Supreme Court doctrine on abusive process, this all comes under that rubric, is that right? What's the title they use? I remember they merged a couple common law courts. You're correct, Judge Hartz. The New Mexico Supreme Court in Devaney abolished or eliminated the tort of malicious prosecution, which is the claim that the head court addressed and found was most analogous. The New Mexico Supreme Court merged that claim, that tort, with the tort of abusive process, and in doing so, it specifically eliminated the favorable termination requirement. Has it ever applied that in a malicious prosecution case or was Devaney a malicious prosecution case itself? It was, but it was in a different civil context. There was no criminal conviction component there. No, Your Honor, there wasn't. So there's no need to predict whether New Mexico would change its laws. It's pretty clear that favorable termination is not an element of the claim, and plaintiff has conceded that in the reply brief. His alternative theory that predicts New Mexico would follow the restatement also fails because it relies on Wallace v. Cato, where the Supreme Court declined to apply hack, distinguishing false imprisonment claims from malicious prosecution claims, reasoning that a false imprisonment claim ends when the legal process begins. Therefore, it declined to apply the hack rule and adopted the restatement, and in doing so, it recognized that each period of false imprisonment is considered a distinct unit and adopted the reasoning, the policy reasoning, under the restatement that false imprisonment claims are subject to a distinct rule that recognizes that a false imprisonment victim may be unable to file suit until the period of false imprisonment ends. And here the district court applied that analysis and said that Plano's theory fails on that ground as well because the period of his incarceration, of course, in his facility is a separate and distinct unit from the subsequent period of his release. And there was nothing, it was undisputed that there was nothing that impeded his ability to bring claims against CoreCivic within the statute of limitations during the period of his release. Plano's argument that parole is a deprivation of his liberty disregards that false imprisonment, and I think Judge Rosman, you brought this point up or alluded to it, that false imprisonment is a claim that not just requires the deprivation of liberty, but it requires confinement or restraint. More specifically, confinement or restraint to a particular area or bounded area. And that is incarceration, and that is the opposite of parole, which is released from a confined, a confinement. Did you want to save some time for? Oh, I'm sorry. Yes. Thank you. May it please the court. I'm Mark Comer on behalf of the corrections defendants. And Judge Hart, just to address your question about a mechanism to compensate, I don't know that there is, but I think the way that issue is addressed is done through judicial remedies. If a court makes a mistake and enters an order that's wrong, for some reason we have those arguments in the original court. There's the right to appeal. In this case, there's also a habeas component as well, all of which were utilized in this case. And I understand there's a good deal of tension in the case that arises from this later order, talking about things that happened back in 2002 and 2012, all of which predate the factual allegations concerning my client. Is there a question, a legitimate question, that he served four years more on his sentence than he should have, either in confinement or on parole? Is there any question about that? It's a conclusion that I'm unable to resolve based on the record. I can't resolve it. There was not a court order saying that he had served, that his sentence should have ended four years earlier? There was a stipulation by counsel that was presented to the court. Stipulation by counsel, and that included counsel from the state? The district attorney. Doesn't that bind the state? I would assume that it does bind the state if they make that stipulation. I would say the remedy is through the judiciary, through the courts. He's got a tough road to hoe to bring a 1983 action, as you've already heard. They may have done as well as they can, but there's some things they have to prove there, and I don't see why they should have to prove that this was malicious, intentional, reckless by the government. If it was negligence or whatever, he served four years he shouldn't have served. I'm just astonished that there's not a mechanism where he would get compensation from the state. The court, in accepting that stipulation, accepted what it said, which was the parties did this and the court did this. The concern I have in this case is that if the responsibility for this rests with the parties or the court, which has absolute immunity in matters like this, then it would be completely inappropriate to try to foist all this over onto some clerks at the corrections office under a section 1983 action. It doesn't make any sense at all. Why not foist it on the state? As I said, this state's rolling in money right now. There's no excuse for not paying. I'm just astonished by what's going on in this case. Well, Your Honor, I don't know about discussing what's happening just in terms of the state in that context. What I'm addressing is I've got individual defendants that I have to represent. Well, you wouldn't have to if they paid. Then you wouldn't be sued. I don't know what to say to that other than I'm here representing my colleagues. Well, talk to somebody, would you? Somebody ought to take charge here and do justice. I'm not sure we can. I don't think the right thing to do would be to impose these sort of obligations on these corrections officials. That makes sense. And I don't think the case has been made against them. And I don't think the law in a situation like this imposes that sort of obligation on them. And I don't think there's adequate factual allegations tying them to this order that appeared at this time. What about as to Ms. Padilla? Why are the allegations sufficient as to that defendant? There are two allegations against Ms. Padilla. The first one has to do with 311 days of pre-sentence confinement credit. That arose as a result of a stipulation between the DA and Mr. White's counsel. The judge entered that correction. It was made on the record. It was reflected in later orders. So Ms. Padilla doesn't have anything to do with that. That was something that is reflected in the sentence. And it's reflected multiple times. So she doesn't have anything to do with that. The other issue that's mentioned is these good time figuring sheets. But, here again, there's nothing in the court's order that ties anything to good time figuring sheets by Ms. Padilla. It's got nothing to do with good time figuring sheets. It's exactly the opposite. What the court order says, the thing that released Mr. White, was that the court and the parties made an error that then caused the mistakes later. They're causing mistakes later. First of all, we're back to the problem of there's no showing of deliberate indifference if someone has been misled by something the court and the parties did. But, in any event, there's nothing in the order, that's the genesis of all of this, that has anything to do with good time figuring sheets or Ms. Padilla. Ms. Padilla was not advising the court. She wasn't a court-appointed expert. So far as I know, there's no reason for her to even have been present in the courthouse. But these sound like summary judgment arguments. Why aren't these arguments that you're making arguments that will be available to you after discovery? They will be available to me whenever I need to make them. But I think we can make them based on the record that we have now because we have the benefit of a pretty developed record from the criminal proceedings, which have come in without any objection at this point. We have the court sentencing orders. We have the records of what transpired, motions and orders and statements and so on and so forth. That's what I was asking about earlier. So it's not on summary judgment, but records referred to in the complaint, if uncontested, can be considered on a motion to dismiss. Is that what's happening here? That's why we have these other records? That's exactly right, Your Honor. They're referenced in the complaint, but they're also their court, their official court records. And they've come in without objection, and we've all discussed them. So I think in that context, they come in and can be considered on a motion for judgment on the pleadings as they have been here, as they were in the court below. The judge below also determined in granting Ms. Padilla qualified immunity that the facts in the complaint did not tie her to anything concerning Mr. White's incarceration for this additional period, if that's what, in fact, occurred. And that come back to this again, it would not be appropriate to impose this sort of obligation on her for mistakes that may have been made by others that are present in this case. Thank you. Thank you. Counsel, you're private counsel, is that right? I am, Your Honor. You're retained by the state? I am. And who do you respond to? I respond to the Department of Corrections and the State Risk Management Division, Your Honor. So you'll report on these proceedings? I certainly will. Okay. Thank you. Thank you. Case submitted. Counselor excused.